

FILED

OCT - 7 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN THE MATTER OF THE EXTRADITION OF:**<br><br>**JOSE ANTONIO VELASCO HERNANDEZ** | CASE NO. 07mj8333<br><br>**ORDER DENYING MOTION TO DISMISS (Doc. 23)**<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING REQUEST FOR EXTRADITION**<br><br>**CERTIFICATE OF EXTRADITABILITY** |

This is a proceeding under 18 U.S.C. § 3184 pursuant to a request by Mexico through the United States Government (hereinafter "the Government") for the extradition from the United States to Mexico of Jose Antonio Velasco Hernandez under the provisions of the Treaty of Extradition Between the United States of America and Mexico, signed on May 4, 1978 ("Treaty")[1].

On April 9, 2007, the Government, acting on behalf of the Republic of Mexico, presented to the Honorable Peter C. Lewis, United States Magistrate Judge, a Complaint for Provisional Arrest With A

---

[1]Extradition treaty, T.I.A.S. 9656, between Mexico and the United States, signed at Mexico City on May 4, 1978, and entered into force on January 25, 1980.

1  View Towards Extradition in the Matter of Jose Antonio Velasco Hernandez (hereinafter "Velasco
2  Hernandez" or Respondent). (Doc. 1.) The Complaint stated that the Republic of Mexico represented
3  that it would submit a formal request for extradition of Velasco Hernandez, supported by the documents
4  specified in the Treaty. The Complaint requested that Magistrate Judge Lewis issue a warrant, pursuant
5  to Title 18, United States Code, Section 3184 for the provisional arrest of Velasco Hernandez. The
6  Complaint alleged that Velasco Hernandez had committed the crimes of Aggravated Rape for Reasons
7  of Kinship, in violation of Article 176, in relation to Article 179, of the Penal Code for the State of Baja
8  California, Mexico. The Complaint also alleged that the conduct of Velasco Hernandez would constitute
9  an extraditable offense under Article 1, Appendix Item 5 of the Treaty. The Complaint further alleged
10  that on October 29, 2004, a District Judge in the Judicial District of Mexicali, Baja California, Mexico,
11  issued a warrant for Velasco Hernandez's arrest for the aforementioned crimes. Magistrate Judge Lewis,
12  finding probable cause, signed the Complaint and issued the provisional arrest warrant. (See Docs. 2, 3.)

13      On May 3, 2008, Velasco Hernandez was arrested pursuant to the provisional warrant issued. On
14  May 20, 2008, the Court determined Velasco Hernandez was to be held without bail. (Doc. 6.) The
15  Government filed the extradition packet on July 2, 2008, containing the extradition request dated,
16  certified, and authenticated on June 12, 2008 from Mexico. (Doc. 13.) On July 16, 2008, Velasco
17  Hernandez filed a motion for bond and bail review, (doc. 17), which was denied on July 25, 2008, (doc.
18  21). On July 28, 2008, Velasco Hernandez filed a motion for an order to "(1) dismiss the complaint on
19  the basis that the statutory extradition procedure is unconstitutional and in violation of international law,
20  (2) . . . to assign the matter to a different judicial officer in order to preserve the right to an independent
21  review of the evidence, and (3) [to] require confrontation of any testimonial statements considered by
22  the Court." (Doc. 23, at 2.) For the reasons set forth herein, the motion is DENIED.

23      On August 8, 2008, the Court conducted an extradition hearing. Following the hearing, the
24  Court held the record open to permit additional briefing by the parties. On August 22, 2008, Velasco
25  Hernandez filed a Response and Opposition to Government's Extradition Request. (Doc. 27.) The
26  Government filed a Reply on September 4, 2008. (Doc. 28.) The Court held an additional extradition
27  hearing on September 17, 2008. Upon considering the parties' submissions, for the reasons set forth
28  below, the Court GRANTS the request for extradition.

1

2                                    **I. Legal Standards**

3          Extradition from the United States is a diplomatic process that is initiated by a request from the

4   nation seeking extradition directly to the Department of State. Prasoprat v. Benov, 421 F.3d 1009, 1010

5   (9th Cir. 2005). "After the request has been evaluated by the State Department to determine whether it

6   is within the scope of the relevant extradition treaty, [the] United States Attorney . . . files a complaint in

7   federal district court seeking an arrest warrant for the person sought to be extradited." Blaxland v.

8   Commonwealth Dir. Of Pub. Prosecutions, 323 F.3d 1198, 1207 (9th Cir. 2003). "Extradition treaties

9   are to be liberally construed so as to effect their purpose, that is, to surrender fugitives for trial for their

10  alleged offenses." Valentine v. U.S. ex rel. Neidecker, 299 U.S. 5, 14 (1936).

11         Under 18 U.S.C. § 3184 et seq., in order to extradite the respondent, the Government, on behalf

12  of Mexico, must establish that:

13         (1)     The judicial officer is authorized to conduct the extradition proceedings;

14         (2)     The court has jurisdiction over the fugitive;

15         (3)     The applicable treaty is in full force and effect;

16         (4)     The crimes for which surrender is sought are included within the terms of the treaty; and

17         (5)     There is probable cause that a crime was committed and that the respondent participated

18                 in or committed them.

19  Bingham v. Bradley, 241 U.S. 511 (1916); McNamara v. Henkel, 226 U.S. 520, 523-24 (1913);

20  Zanazanian v. U.S., 729 F.2d 624, 625-26 (9th Cir. 1984); Cornejo-Barreto v. Seifert, 218 F.3d 1004,

21  1009-10 (9th Cir. 2000).

22         If the Court determines that all of the requisite elements have been met, the findings are

23  incorporated into a certificate of extraditability. The certificate is forwarded to the Department of State.

24  The Secretary of State makes the ultimate decision on whether to surrender the respondent. 18 U.S.C. §

25  3186.

26                                       **II. Discussion**

27  A. Requirements for Extradition

28         1. Authority of Judicial Officer

                                            3

1         The authority of a magistrate judge to conduct the proceedings is provided by 18 U.S.C. § 3184,

2  Ward v. Rutherford, 921 F.2d 286, 289 (D.C. Cir. 1990), and Criminal Local Rule 57.4(a)(3).

3  Respondent challenges the undersigned magistrate judge's authority on three grounds: 1) Respondent

4  argues that he is entitled to have a different judicial officer render a decision on extraditability from the

5  one who issued the provisional arrest warrant in this case, (doc. 23-2, at 13); 2) Respondent argues that

6  the extradition procedure violates the separation of powers doctrine, (doc. 23-2, at 2); and 3) Respondent

7  argues that the extradition process violates the International Covenant on Civil and Political Rights and

8  the Covenant against Torture, (doc. 23-2, at 8).

9         First, under 28 U.S.C. § 455(a), "[a]ny justice, judge or magistrate [judge] of the United States

10  shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

11  However, as stated in Oen Yin-Choy v. Robinson, 858 F.2d 1400 (9th Cir. 1988), "[f]ederal district

12  judges are frequently called upon to reconsider prior rulings without recusing themselves," even in

13  extradition cases. Id. at 1408 (stating that a judge who presides over an extradition case need not recuse

14  himself in the subsequent habeas corpus action) (citations omitted). Other than asserting that the judge

15  who signs the provisional arrest warrant cannot render the decision on extraditability, Velasco

16  Hernandez provides no other reason to question the impartiality of the undersigned magistrate judge.

17  Thus, Velasco Hernandez's motion to dismiss on the ground of impartiality is DENIED.

18         Second, the separation of powers argument was squarely rejected by the Ninth Circuit in Lopez-

19  Smith v. Hood, 121 F.3d 1322, 1327 (9th Cir. 1997) (finding the Secretary of State's discretion to

20  review the court's decision of extraditability does not violate the separation of powers doctrine). Thus,

21  because this Court is bound by Hood, the Court DENIES Velasco Hernandez's motion to dismiss with

22  regard to his separation of powers argument.

23         Third, Velasco Hernandez's argument that the statutory extradition process violates the

24  International Covenant on Civil and Political Rights and the Covenant against Torture also will not

25  prevent the undersigned magistrate judge from issuing a certificate of extraditability. As the

26  Government correctly points out, "'[i]t is only when a treaty is self-executing, when it prescribes rules

27  by which private rights may be determined, that it may be relief for enforcement of such rights.'" Matter

28  of Extradition of Cheung, 968 F. Supp. 791, 803 n.17 (D. Conn. 1997) (quoting from docket). Both of

1 | these international treaties "were ratified with the express proviso that they were *not* self-executing." Id.
2 | Because Congress has not authorized judicial enforcement of these treaties, they do not prevent the
3 | undersigned magistrate judge from issuing a decision on extraditability.  Relying on Cornejo-Barreto v.
4 | Seifert, 218 F.3d 1004 (9th Cir. 2000), Respondent possibly may make a habeas corpus claim based on
5 | these treaties once the Secretary of State issues its extradition decision.  See id. at 1007.  At this stage in
6 | the proceedings, however, Respondent cannot rely on these treaties; thus, Respondent's motion to
7 | dismiss on this ground is DENIED.

8 |       2. Jurisdiction Over the Individual Sought

9 |       The Court has jurisdiction over Velasco-Hernandez if he is before the Court.  In re Pazienza, 619
10 | F. Supp. 611, 616 (S.D.N.Y. 1985).  Respondent has not challenged this element.

11 |       3.  Validity of Treaty

12 |       The law limits extradition to circumstances in which the Treaty is in full force and effect.  18
13 | U.S.C. § 3184.  This element is not challenged by Respondent.

14 |       4. Treaty Coverage

15 |       On July 1, 2008, the United States filed the declaration of Gregory B. Wierzynski, Attorney-
16 | Advisor, U.S. Department of State, who confirmed that there is a valid extradition treaty in force
17 | between the United States and Mexico.  A copy of the treaty is attached to Mr. Wierzynski's declaration.
18 | (Doc. 12.)

19 |       According to Article 2, paragraph 1, of the Treaty, acts are extraditable if they fall within any of
20 | the clauses listed in the Appendix, and are punishable in both the United States and Mexico by
21 | imprisonment for one year or more.  Additionally, according to Article 2, paragraph 3, acts are
22 | extraditable even if they are not listed in the Appendix, so long as they are punishable in both countries
23 | by imprisonment for one year or more.

24 |       Here, both the diplomatic note and the supporting documents provided by the Mexican
25 | government describe an extradition request of Velasco Hernandez for acts which constitute the Mexican
26 | crime of "Aggravated Rape for Reasons of Kinship."  Such acts are extraditable under both paragraphs 1
27 | and 3 of Article 2.  As Attorney-Advisor Wierzynski stated in his declaration, "The offense for which
28 | extradition is sought is punishable in accordance with the laws of both contracting parties . . . and is

1   covered under Article 2 of the 1978 Extradition Treaty between the United States and Mexico." (Doc.

2   12, at 3.)

3           5. Dual Criminality

4           Under the principle of dual criminality, "no offense is extraditable unless it is criminal in both

5   jurisdictions." Caplan v. Vokes, 649 F.2d 1336, 1343 (9th Cir. 1981).  The name by which the crime is

6   described in the two countries need not be the same, nor need the scope of the liability for the crimes be

7   either coextensive or the same in both countries.  Collins v. Loisel, 259 U.S. 309, 470-71 (1922).

8   Instead, "dual criminality exists if the 'essential character' of the acts criminalized by the law of each

9   country are the same and if the laws are 'substantially analogous.'" Theron v. U.S. Marshal, 832 F.2d

10   492, 496 (9th Cir. 1987) (citing Wright v. Henkel, 190 U.S. 40, 58 (1903)).  In assessing dual

11   criminality, the extradition magistrate judge may consider similar criminal provisions of federal law.  Id.

12           Velasco Hernandez has been accused by Mexico of "aggravated rape by kinship appointed in

13   articles 176 related to 179 of the Federal Criminal Code in the subject matter, with the maximum

14   corresponding from ten to fifteen years imprisonment for the crime of rape carried out against a fourteen

15   year-old minor, giving a total of twenty-five years." (Doc. 13-2, at 8.)  Article 176 of the Criminal Code

16   of the State of Baja California states:

17           An imprisonment penalty ranging from three to ten years and up to three hundred times the
            minimum salary shall be imposed upon whomever by means of physical or moral violence
18          copulates with a person against his will, regardless of his gender.  If the victim is less than
            fourteen years old, the imprisonment penalty shall be of from six to ten years and up to five
19          hundred times the minimum salary.

20           (Doc. 13-2, at 4.)

21   On sentence enhancement, Article 179 states:

22           Whenever the offense of rape is committed by an ancestor against a descendent, and vice versa,
            by a guardian against his ward or by the stepfather or the paramour of the victim's mother,
23          against the stepson, an imprisonment penalty ranging from two to four years, apart from the
            sanctions appointed by the aforementioned articles, shall be imposed.
24
25   And the applicable statute of limitations provision, Article 114, states:

26           The criminal action shall prescribe in a period equal to the arithmetical medium term of the
            imprisonment penalty specified by the Law for the offense in question, but it shall not be less
27          than three years in any case. . . . If apart from the imprisonment penalty, the offense deserves
            other accessory or alternative penalty, the statute of limitations for the criminal action if the
28          imprisonment penalty shall be considered.

            (Doc. 13-2, at 2-5.)

Under United States federal law, rape of a minor is defined as "knowingly engag[ing] in a sexual act with another person who – (1) has attained the age of 12 years by has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging; . . . shall be fined under this title, imprisoned not more than 15 years, or both." 18 U.S.C. § 2243.

Comparing both countries' applicable statutes, the Court concludes that the essential character of the act criminalized by each country is the same and that the laws in question are substantially analogous.

6. Probable Cause Analysis

The central function of the extradition magistrate judge is to determine neither guilt nor innocence, but to determine whether probable cause exists to hold the extraditee for trial in the requesting state. Escobedo v. U.S., 623 F.2d 1098, 1102 n.5 (5th Cir. 1980); see also U.S. v. Wiebe, 733 F.2d 549, 553 (8th Cir. 1984) ("The extradition hearing is not a trial on the merits to determine guilt or innocence, but serves as a means of ensuring that probable cause exists to believe the person whose surrender is sought has committed the crime for which his extradition is requested."); Hooker v. Klein, 573 F.2d 1360, 1367 (9th Cir. 1978). "The probable cause standard applicable in extradition proceedings is defined in accordance with federal law and has been described as 'evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" Wiebe, 733 F.2d at 553 (citation omitted).

a.      Identification Issue

Respondent contends that there is insufficient proof that he is the person named in the request for extradition. Therefore, the Court must determine, as part of its probable cause analysis, whether Respondent is the individual accused of committing the crime charged.

1. Legal Standards

Although generally not listed as one of the traditional five factors used to determine extraditability, a Court may be called upon to determine whether the respondent in an extradition proceeding is, in fact, the person named in the request for extradition. See generally Matter of the Extradition of Valdez-Mainero, 3 F. Supp. 2d 1112, 1114 (S.D. Cal. 1998). In extradition matters, "there is no per se rule that specifies which identification procedures are 'competent' for probable cause

1   purposes." Quinn v. Robinson, 783 F.2d 776, 815 (9th Cir. 1986). Rather, the "reliability of the

2   identification should be determined on the basis of the totality of the circumstances." In re Extradition

3   of Chavez, 408 F. Supp. 2d 908, 914 (N.D. Cal. 2005) (citation omitted).

4                                    2. Discussion

5          The extradition packet describes Jose Antonio Velasco Hernandez as a citizen of Mexico, born

6   on January 24, 1969, having light brown skin, brown eyes, and thick lips, the upper lip being scarred.

7   (Doc. 13, at 17.)   He has a common law marriage to Diana Guadalupe Solis Benitez, mother of the

8   alleged victim, Sulin Biviana Garcia Solis, who is Respondent's stepdaughter. (Doc. 13, at 13.) During

9   the time of the alleged crime, Respondent lived with his wife and stepdaughter in Mexicali, Baja

10  California, 1436 Jalpa Street, Apartment C, colonia Zacatecas. (Id.) He also has lived and worked in the

11  United States. (Id. at 49.) The packet also contains color photographs of Velasco Hernandez, matching

12  the written description detailed in the sworn affidavit supporting the formal extradition request. (Id. at

13  17.)

14         According to testimony taken at the bail hearing, on May 4, 2008, Respondent was apprehended

15  by the Brawley Police Department as he attempted to circumvent a sobriety checkpoint in Brawley,

16  California. Upon apprehension, Respondent gave his brother's name, Juan Manuel Velasco, as his own,

17  and a false date of birth of May 27, 1977. Arresting officers at the scene became suspicious of

18  Respondent when he gave a false date of birth and decided to contact the United States Border Patrol.

19  Respondent's date of birth was verified to be January 24, 1969. Upon attaining his identity, it was

20  discovered that there was an outstanding provisional arrest warrant for Respondent. United States

21  Marshal Robert Vazquez was contacted, and he took Respondent into custody. While in custody,

22  Respondent stated to Agent Vazquez that he knew he was wanted in Mexico for criminal conduct.

23         Having considered the evidence, this Court finds that the Jose Antonio Velasco Hernandez

24  named in the request for extradition and the person brought before this Court on the Complaint for

25  Extradition are one and the same person.  Identity is established by:

26         (a)     The April 9, 2007 Complaint;

27         (b)     The Extradition Packet submitted on July 2, 2008;

28         (c)     Robert Vazquez's sworn testimony;

1      (d)    This Court's observation of Respondent in Court during the extradition hearing on

2      September 17, 2008, and comparison to the color photographs in the Extradition packet.

3      The complaint and the extradition packet are competent evidence upon which Velasco

4  Hernandez's identity may be established. See e.g., Glucksman v. Henkel, 221 U.S. 508, 513 (1911)

5  (finding that photographs of the fugitive provided by the requesting state may be used to make an

6  identity determination in international extradition matters). The written description of Velasco

7  Hernandez and the photographic evidence in the extradition packet match the person brought before this

8  Court. Moreover, Respondent gave a false date of birth and his brother's name when he was arrested in

9  the United States. The United States Border Patrol later verified that Respondent's date of birth was

10  January 24, 1969, the same date given in the extradition packet for Velasco Hernandez's birthday. Thus,

11  based on the foregoing, the Court finds that the Jose Antonio Velasco Hernandez named in the request

12  for extradition and the person brought before this Court on the Complaint for Extradition are one and the

13  same person.

14      b.    Evidentiary Issues

15      The Treaty between the United States and Mexico calls for probable cause to be measured by the

16  standards established in the requesting country. Article 3 of the Treaty says, in part:

17      Extradition shall be granted only if the evidence be found sufficient, according to the laws of the
    requested Party, either to justify the committal for trial of the person sought if the offense of
18      which has been accused had been committed in that place . . . .

19      The laws of the requested Party may be defined by federal law. See Oen Yin-Choy v. Robinson,

20  858 F.2d 1400, 1407 (9th Cir. 1988). Under federal law, the magistrate judge need only determine

21  whether there is competent evidence to justify holding the Respondent for trial, not whether the evidence

22  is sufficient to justify conviction. Collins v. Loisel, 259 U.S. 309, 316 (1922). The magistrate judge's

23  function is to determine whether there is "any" evidence establishing reasonable or probable cause.

24  United States ex rel Sakaguchi v. Kaulukukui, 520 F.2d 726, 730 (9th Cir. 1975). The admissibility of

25  evidence in extradition matters is controlled by 18 U.S.C. § 3190, which provides as follows:

26      Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of
    any extradition case shall be received and admitted as evidence on such hearing for all purposes
27      of such hearing if they shall be properly and legally authenticated so as to entitle them to be
    received for similar purposes by the tribunals of the foreign country from which the accused
28      party shall have escaped, and the certificate of the principal diplomatic or consular officer of the

United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

18 U.S.C. § 3190. "[A]uthentication is the only requirement for admissibility of evidence under general United States extradition law." OenYin-Choy, 858 F.2d at 1406 (citation omitted).

An extradition hearing is not a criminal proceeding, and the person whose return is sought is not entitled to the rights available in a criminal trial at common law. Charlton v. Kelly, 229 U.S. 447, 461 (1913); Glucksman v. Henkel, 221 U.S. 508, 512 (1911). The Supreme Court has found that extradition may be predicated entirely on the "unsworn statements of absent witnesses." Collins v. Loisel, 259 U.S. 309, 317 (1922). Extradition treaties do not contemplate the introduction of testimony of live witnesses by the Respondent to contradict the demanding country's proof. Bingham v. Bradley, 241 U.S. 511, 517 (1916). In general, evidence that conflicts with that submitted on behalf of the demanding party is not permitted, nor is impeachment of the credibility of the demanding country's witnesses. Collins v. Loisel, 259 U.S. 309, 315-17 (1922); In re Locatelli, 468 F. Supp. 568, 573-74 (S.D.N.Y. 1979). As stated in Oen Yin-Choy v. Robinson, 858 F.2d 1400 (9th Cir. 1988), "a defendant has no right to cross-examine witnesses or introduce evidence to rebut that of the prosecutor" in extradition proceedings. Id. at 1407; see In re Solis, 402 F. Supp. 2d 1128, 1131 (C.D. Cal. 2005). Thus, Respondent's motion requesting confrontation of adverse witnesses under the Sixth Amendment, which is inapplicable to extradition proceedings, is DENIED.

It has been held appropriate to permit evidence that tends to obliterate probable cause but not evidence which merely contradicts the same. In the Matter of the Extradition of Contreras, 800 F. Supp. 1462, 1464 (S.D. Tex. 1992). In Shapiro v. Ferrandina, 355 F. Supp. 563 (S.D.N.Y. 1973), affirmed as modified, 478 F.2d 894 (2d Cir. 1973), the court stated in part:

> The improbability or the vagueness of the testimony may destroy the probability of guilt, but the tendering of witnesses who testify to an opposite version of the facts does not. The latter must await trial on the merits.

Id. at 572. "The rule is that the accused has no right to introduce evidence which merely contradicts the demanding country's proof, or which only poses conflicts of credibility." In re Extradition of Sindona, 450 F. Supp. 672, 685 (S.D.N.Y. 1978), aff'd, 619 F.2d 167 (2d Cir. 1980). On the other hand, "the accused has the right to introduce evidence which is 'explanatory' of the demanding country's proof," which would have "some reasonable chance of negating a showing of probable cause." Id. Ultimately,

1    however, the extradition magistrate judge "does not weigh conflicting evidence and make factual

2    determinations but, rather, determines only whether there is competent evidence to support the belief

3    that the accused has committed the charged offense." Quinn v. Robinson, 783 F.2d 776, 815 (9th Cir.

4    1986); see also, e.g., U.S. ex rel. Sakaguchi v. Kaulukukui, 520 F.2d 726, 730-31 (9th Cir. 1975)

5    ("magistrate's function is to determine whether there is 'any' evidence sufficient to establish reasonable

6    or probable cause").

7           c. Probable Cause Finding

8           The documents submitted by Mexico in support of its extradition request have been properly

9    authenticated.  Respondent does not question the authentication of the documents submitted, but argues

10   that the extradition packet is incomplete because the photographs included in the packet do not exactly

11   match those used by the Mexican judge in her probable cause statement and because no copy of the

12   original witness statement made by Respondent and used by the Mexican judge was provided in the

13   packet.  However, the Court need not have the exact same evidence used by the Mexican judge in

14   issuing an arrest warrant; instead, the Court must determine whether competent evidence has been

15   presented to this Court by the Mexican Government to establish probable cause that Respondent

16   committed the offense to which he is charged.

17          Here, the evidence presented by Mexico in the extradition packet demonstrates probable cause

18   that Respondent committed the crime of rape in Mexico.  The packet includes evidence that from

19   approximately 2001 to 2004, in Mexicali, Baja California, Velasco Hernandez repeatedly had sexual

20   intercourse with his then 11- to 14-year-old stepdaughter, Sulin Biviana Garcia Solis (hereinafter

21   "victim").  In a statement made by the victim, she indicated that her stepfather, Jose Antonio Velasco-

22   Hernandez, forced her to have sexual relations with him multiple times. (Doc. 13-2, at 13-15 (Exhibit

23   6).)  The victim also indicated that Velasco Hernandez threatened her by claiming he would send her to a

24   mental institution if she told anyone about the sex. (Id. at 13.)  The victim stated that these acts usually

25   occurred in her home in the neighborhood of Zacatecas, Mexicali, Baja California, Mexico, when her

26   mother, Diana Guadalupe Solis Benitez, was not at home. (Id.)  In a separate statement, Diana

27   Guadalupe Solis Benitez's friend, Veronica Ramirez Cuevas, stated that the victim's mother and

28   Velasco Hernandez together had a biological son, Manuel Alejandro Velasco Solis.  (Doc. 13-2, at 20

1  (Exhibit 8).)  Cuevas also stated that she witnessed Velasco Hernandez hug, kiss, and touch the victim's

2  breasts in public.  (Id.)  In a statement made by Velasco Hernandez's son, Manuel Alejandro Velasco

3  Solis, he states that he saw his father and the victim without clothes lying on top of one another.  (Doc.

4  13-2, at 24 (Exhibit 9).)

5          The packet also includes a gynecological exam report signed by medical expert, Dr. Patricia

6  Cortez Castillo, who is assigned to the department of Expert Services of the Attorney General's Office

7  of the State of Baja California.  (Doc. 13-2, at 17 (Exhibit 7).)  In her report, Dr. Castillo concluded that

8  Solis was no longer a virgin and that the defloration was not recent.  (Id. at 18.)  Furthermore, the packet

9  includes an expert psychological report issued September 14, 2004, signed by attorney Veronica Fino

10  Camacho, a psychological expert, who concluded that Solis suffers from severe emotional affectation,

11  "since the presence of the characteristics corresponding to a victim of sexual aggression are present."

12  (Doc. 13-2, at 42 (Exhibit 11).)

13          In sum, this Court finds that the evidence supplied by Mexico is competent and demonstrates

14  probable cause that Respondent, using "moral violence," committed the crime of rape of a minor related

15  to Respondent in Mexico as described in Article 176 and Article 179 of the Criminal Code of the State

16  of Baja California.  Moreover, the statute of limitations period, which has been calculated to be eleven

17  years according to Article 114, has not expired.  (See doc. 27, at 8.)

18          Respondent makes several arguments as to why probable cause should not be found.  Respondent

19  attacks the credibility and the consistency of the statements given by the following individuals: the

20  victim, Sulin Biviana Garcia Solis; the brother of the victim, Manuel Velasco; the mother of the victim,

21  Diana Solis; and the mother's friend, Veronica Ramirez.  (Doc. 27, at 9-20.)  Respondent also attacks the

22  findings of the gynecologic expert's report and the psychology expert's report as inconsistent with the

23  proffered testimony.  (Id. at 15-26.)  However, none of these arguments clearly obliterate probable cause.

24  To negate probable cause, it is not enough to attack the credibility and consistency of the witnesses

25  because the extradition magistrate judge "does not weigh conflicting evidence and make factual

26  determinations."  Also, the findings in the expert reports are plausibly consistent with the proffered

27  testimony.  Thus, Respondent fails to offer any clear-cut proof that negates this Court's probable cause

28  finding.

B. Delay Does Not Result in Due Process Violation

Respondent urges that Mexico's four-year delay in bringing the rape charges and formally requesting his extradition is a violation of his due process rights under the U.S. Constitution. (Doc. 25, at 1-2.)  Respondent essentially is arguing that the proceedings in Mexico will violate his due process rights.  However, the time frame of the crime for which Respondent is charged is within Mexico's statute of limitations period. (See doc. 27, at 8.)  There is nothing that shocks the conscience about the delay in charging and extraditing Respondent when Mexico has operated properly within its own legal framework.  Furthermore, other courts have found no due process violation with even longer delays between the incidents giving rise to criminal charges and the extradition. See In re Extradition of Drayer, 190 F.3d 410, 415 (6th Cir. 1999) (finding that a fourteen-year delay did not violate due process); Martin v. Warden, 993 F.2d 824, 829-30 (11th Cir. 1993) (certifying relator for extradition after a seventeen-year delay); Kamrin v. United States, 725 F.2d 1225 (9th Cir. 1984) (finding no due process violation for an eight-year delay).  Thus, Respondent's motion to dismiss for unconscionable delay is DENIED.

///
///
///
///
///
///
///
///
///
///
///
///
///
///

### III. Certification and Order

In accordance with the Memorandum filed herewith,

IT IS HEREBY CERTIFIED TO THE SECRETARY OF STATE that the evidence against Respondent Jose Antonio Velasco Hernandez is sufficient to sustain the charge of rape against him in Mexico under the applicable treaty and protocol, that said Respondent is extraditable under the aforesaid treaty and protocol, and that further proceedings in extradition may be conducted.

IT IS FURTHER ORDERED that the motion of Respondent to dismiss these proceedings is DENIED.

The extradition request and the supporting documents admitted into evidence during the hearing are properly certified and authenticated or otherwise admissible within the discretion of the Court. Accordingly, the Court will certify the above findings, and all documents admitted into evidence, to the Secretary of State, pursuant to 18 U.S.C. § 3184.

IT IS SO ORDERED.

DATED: October 7, 2008

Peter C. Lewis
U.S. Magistrate Judge
United States District Court

14